ORIGINAL

Approved: _____
CATHERINE E. GEDDES
Assistant United States Attorney

Before: THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

17 MAG 5423

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

    - v. -

JAMEL MCRAE,
a/k/a "Mel,"

                 Defendant.

**COMPLAINT**

Violation of 21 U.S.C.
§§ 812, 841(a)(1),
841(b)(1)(B), and 846

COUNTY OF OFFENSE:
NEW YORK

- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

    ADAM J. LAWLER, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA"), and charges as follows:

COUNT ONE

    1. From at least in or about May 2017, up to and including on or about July 19, 2017, in the Southern District of New York and elsewhere, JAMEL MCRAE, a/k/a "Mel," the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

    2. It was a part and an object of the conspiracy that JAMEL MCRAE, a/k/a "Mel," the defendant, and others known and unknown, would and did distribute and possess with the intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

    3. The controlled substance that JAMEL MCRAE, a/k/a "Mel," the defendant, conspired to distribute and possess with the intent to distribute was 280 grams and more of a mixture and substance containing a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

## COUNT TWO

4.    On or about May 19, 2017, in the Southern District of New York, JAMEL MCRAE, a/k/a "Mel," the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

5.    The controlled substance involved in the offense was 28 grams and more of a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 812,
841(a)(1), 841(b)(1)(B).)

## COUNT THREE

6.    On or about June 16, 2017, in the Southern District of New York, JAMEL MCRAE, a/k/a "Mel," the defendant, knowingly and intentionally distributed and possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

7.    The controlled substance involved in the offense was 28 grams and more of a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 812,
841(a)(1), 841(b)(1)(B).)

## COUNT FOUR

8.    On or about July 19, 2017, in the Southern District of New York, JAMEL MCRAE, a/k/a "Mel," the defendant, knowingly and intentionally possessed with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

9.    The controlled substance involved in the offense was 28 grams and more of a mixture and substance containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(B).

(Title 21, United States Code, Sections 812,
841(a)(1), 841(b)(1)(B).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

10.  I am a Special Agent with the DEA, and I have been personally involved in the investigation of this matter. This Affidavit is based upon my personal participation in the investigation, my examination of reports and records, and my conversations with other law enforcement agents and other individuals. Because this Affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

11.  During the course of this investigation, I and other law enforcement agents have spoken with a confidential source ("CS-1").[1] Based on my participation in this investigation and my discussions with CS-1 and other law enforcement officers involved in this investigation, I have learned, among other things, the following:

   a.  On or about May 17, 2017, at the direction of law enforcement, CS-1 called JAMEL MCRAE, a/k/a "Mel," the defendant, at a phone number ending in 8381 ("Phone-1").[2] During this call, which was recorded, CS-1 arranged to purchase approximately two ounces of crack cocaine (approximately 56 grams) from MCRAE on May 19, 2017. CS-1 and MCRAE discussed MCRAE's regular price of $50 per gram, for a total of $2,800, and MCRAE agreed to give CS-1 a discounted price, although no specific price was agreed upon.

   b.  Based on my and other law enforcement agents' observations, and based on recorded communications and later conversations with CS-1, I know that the following occurred during a transaction on or about May 19, 2017:

---

[1] CS-1 has a pending domestic violence charge in another state for making a threat over the phone, and is paid by the DEA for CS-1's work on behalf of law enforcement. The information provided by CS-1 has been deemed reliable and has sometimes been corroborated by other sources.

[2] I know from my review of subscriber records that Phone-1 is subscribed to in the name "Terrell McGrae (Mcrae)" at an address on Jackson Avenue in the Bronx, New York.

3

     vi. CS-1 exited Deli-1 and met with law enforcement to debrief and hand over the purchased narcotics. Approximately one minute after CS-1 had left, MCRAE returned to the vicinity. Approximately ten minutes later, while CS-1 was with law enforcement debriefing, MCRAE called CS-1 from Phone-1, and MCRAE and CS-1 indicated they were "cool" with each other.

  c. Based on my and other law enforcement agents' observations, and based on recorded communications and later conversations with CS-1, I know that the following occurred during a second transaction on or about June 16, 2017:

     i. Prior to the second transaction, CS-1 spoke to MCRAE on Phone-2 and arranged to meet MCRAE in the vicinity of 138th Street and Adam Clayton Boulevard to purchase approximately two ounces (56 grams) of crack cocaine. Law enforcement provided CS-1 with a recording device and $3,000.

     ii. At approximately 2:00 p.m., CS-1 called Phone-2 in order to inform MCRAE that CS-1 had arrived. MCRAE did not answer the call, but, several minutes later, called CS-1 back using Phone-2. During this call, which was recorded, MCRAE and CS-1 discussed where to meet for the transaction, and MCRAE told CS-1 that MCRAE had to "put it together and put some sweatpants on." Based on my training and experience, I believe that when MCRAE said he had to "put it together" he was referring to having to package a quantity of narcotics for CS-1.

     iii. Approximately twenty minutes later, CS-1 spoke to MCRAE on Phone-2, and MCRAE told CS-1 to go to a deli located at 140th Street and Lenox Avenue ("Deli-2"). CS-1 arrived at Deli-2 approximately ten minutes later and entered. At approximately the same time, MCRAE was observed by law enforcement leaving the Building and walking to Deli-2.

     iv. After a few minutes, CS-1 and MCRAE then left Deli-2 and walked west on 140th Street to the Building. MCRAE pushed the buzzer outside the building and entered, while CS-1 continued walking west.

     v. Law enforcement met with CS-1 for a debriefing. CS-1 informed law enforcement that MCRAE had exchanged approximately two ounces of what was represented to be crack cocaine[4] (which CS-1 provided to law enforcement) for

---

[4] As noted above (*see supra* n.3), the results of lab reports on the substance are awaited. However, a field test on the substance tested positive for the presence of cocaine. I know,

5

$2,600 inside Deli-2. CS-1 returned the unspent $400 out of the $3,000 originally received to law enforcement.

        d.   I know from my discussions with CS-1 that after the June 16, 2017 transaction, at the direction of law enforcement, CS-1 had several additional conversations with MCRAE on Phone-2, which were not recorded, to discuss future narcotics transactions. In one such conversation, CS-1 told MCRAE that CS-1 knew someone in Westchester County who was interested in purchasing multiple ounces of crack cocaine to sell in that area. MCRAE informed CS-1 that MCRAE would be able to send a "runner" up to Westchester County with the narcotics if the deal was arranged.

        e.   I know from my discussions with CS-1 that on or about July 18, 2017, CS-1, at the direction of law enforcement, spoke to MCRAE via telephone and arranged to meet MCRAE on or about July 19, 2017 so that CS-1 could purchase from MCRAE approximately 2 ounces of crack cocaine.

        f.   Based on my and other law enforcement agents' observations, and based on my conversations with CS-1, I know that the following occurred on or about July 19, 2017:

        i.   On or about July 19, 2017, CS-1, at the direction of law enforcement, engaged in a recorded phone call with MCRAE in which they agreed to meet at a fast food restaurant located at 139th Street and Adam Clayton Boulevard for the transaction. CS-1 went to that location to wait, but then received another phone call from MCRAE in which MCRAE told CS-1 to meet him at Deli-1 instead.

        ii.   At approximately 2:30 p.m., MCRAE was observed by law enforcement exiting the Building and walking south and west to 138th Street and Adam Clayton Boulevard. At this corner, MCRAE was observed entering an apartment building and coming out a short time later. He was then observed waiting in the vicinity of Deli-1. CS-1 arrived at Deli-1 but then left before any transaction occurred. MCRAE was placed under arrest, and approximately two ounces of what appeared to be crack cocaine were found in MCRAE's underwear.[5]

---

based on my training and experience, that crack cocaine will field test positive for the presence of cocaine.

[5] A field test on the substance tested positive for the presence of cocaine.

     g. I know from my discussions with law enforcement and personal involvement in this case that subsequent to MCRAE's arrest on July 19, 2017, law enforcement conducted a search of Apartment 54 in the Building, pursuant to a judicially authorized search warrant. The search uncovered additional quantities of a substance which appeared to be crack cocaine packaged for distribution in small clear plastic baggies inside several shoeboxes.[6] The total amount of this substance, which field-tested positive for the presence of cocaine, was approximately 368 grams. An empty box of ammunition was also recovered in the same room.

    WHEREFORE, the deponent respectfully requests that JAMEL MCRAE, a/k/a "Mel," the defendant, be imprisoned, or bailed, as the case may be.

                _____
                  ADAM J. LAWLER
                  Special Agent
                  Drug Enforcement Administration

Sworn to before me this
20th day of July, 2017

_____
THE HONORABLE SARAH NETBURN
United States Magistrate Judge
Southern District of New York

---

[6] The substance was recovered inside a bedroom which contained photographs of MCRAE, mail addressed to MCRAE, and a benefits ID card in MCRAE's name.

7