UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

UNITED STATES,

   -against-                                               17-CR-643 (PAE)

JAMEL MCRAE,
              *Defendant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

# JAMEL MCRAE'S
# MOTION FOR COMPASSIONATE RELEASE

Deborah Colson, Esq.
Colson Law PLLC
80 Broad Street, Suite 1900
New York, NY 10004
(212) 257-6455

*Attorney for Jamel Mcrae*

## I.

## **PRELIMINARY STATEMENT**

Jamel Mcrae is imprisoned at Allenwood Low in White Deer, Pennsylvania where he is serving a 70-month sentence imposed by this Court on October 25, 2018. Dkt No. 42. He was remanded on July 9, 2018, following his guilty plea to conspiracy to distribute crack cocaine, in violation of 21 U.S.C. § 841(b)(1)(B). He has an expected release date of June 22, 2022, but will become eligible for home confinement on December 22, 2021. *See* Ex. A. Mr. Mcrae respectfully moves this Court to release him now, pursuant to 18 U.S.C. § 3582(c)(1)(A), so that he may serve the balance of his sentence on home confinement before beginning a four-year period of supervised release.

The unprecedented threat of COVID-19 could not have been foreseen at sentencing and poses a heightened risk to Mr. Mcrae, who suffers from multiple medical conditions, including obesity, hypertension, prediabetes and hepatitis C. Allenwood Low is experiencing an alarming outbreak of COVID-19 with 136 positive inmate cases reported on December 22, 2020. *See https://www.bop.gov/coronavirus/* (last accessed Dec. 22, 2020). In this environment, where Mr. Mcrae is unable to practice social distancing or proper hygiene, his risks of contracting COVID-19 and suffering severe complications are greatly increased.

The Court should also consider Mr. Mcrae's substantial rehabilitation. *See United States v. Brooker*, 976 F.3d 228, 238 (2d Cir. 2020). Over the past 30 months, he has completed the 500-hour RDAP program, studied for his GED, and taken a wide variety of educational courses. His progress is impressive, and he should receive credit for the efforts he has made.

In light of Mr. Mcrae's serious medical conditions and his rehabilitation, we respectfully requests that this Court grant his motion or schedule a prompt hearing.

## II.

## MR. MCRAE'S MEDICAL CONDITIONS

Mr. Mcrae suffers from obesity, hypertension, prediabetes and hepatitis C, making him highly vulnerable to serious illness or death if he contracts COVID-19.

A. <u>Mr. Mcrae is Obese</u>

Since his arrest, Mr. Mcrae's body mass index has fluctuated between 32 and 34, qualifying him as medically "obese." *See* CDC, *Defining Adult Overweight and Obesity* (defining obesity as having a BMI of 30 or higher).[1] As of October 26, 2020, Mr. Mcrae weighed 217 pounds. *See* Ex. B (Vitals All, Dec. 15, 2020). Given his height (5'7"), this translates to a BMI of 33.9. The Centers for Disease Control ("CDC") has issued guidance indicating that adults of any age with obesity "are at increased risk of severe illness" from COVID-19. *See* CDC, *People with Certain Medical Conditions* (Dec. 1, 2010) (hereinafter "*People with Certain Medical Conditions*").[2] It has also warned that obesity "may triple the risk of hospitalization due to a COVID-19 infection" and that "[a]s BMI increases, the risk of death from COVID-19 increases." *See* CDC, *Obesity, Race/Ethnicity, and COVID-19.*[3]

Numerous studies have also linked obesity to higher rates of severe illness, hospitalization and death from COVID-19. *See, e.g.,* Katherine Wu, *Studies Begin to Untangle Obesity's Role in Covid-19*, N.Y. Times (Sept. 29, 2020) (citing recent report finding that obese people infected with COVID-19 "were more than twice as likely to end up in the hospital and nearly 50 percent more likely to die of Covid-19");[4] Sarah Boseley, *Obesity increases risk of*

---

[1] Available at: https://www.cdc.gov/obesity/adult/defining.html
[2] Available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity
[3] Available at: https://www.cdc.gov/obesity/data/obesity-and-covid-19.html
[4] Available at: https://www.nytimes.com/2020/09/29/health/covid-obesity.html

*Covid-19 death by 48%, study finds*, The Guardian, Aug. 26, 2020 (citing recent study finding that "[o]besity increases the risk of dying of Covid-19 by nearly 50% and may make vaccines against the disease less effective.");[5] *Relationship between COVID-19 deaths and morbid obesity*, Science Daily (Aug. 20, 2020) (describing a study finding a significant relationship between obesity and death from COVID-19).[6] In fact, a recent study by researchers from Kaiser Permanente found that obesity is actually a higher risk factor for death among COVID-19 patients than other risk factors and is especially dangerous for men and younger patients. *See* Sara Y. Tartof, PhD, et al, *Obesity and Mortality Among Patients Diagnosed With COVID-19: Results From an Integrated Health Care Organization*, Annals of Internal Medicine (Aug. 12, 2020).[7]

> One federal court has summarized the risk of obesity in stark terms:
>
> A number of recent studies have further investigated the link between obesity and severe illness and death from COVID-19. One study discovered an "increasing risk of death with degree of obesity." In other words, the higher a person's BMI is, the greater the risk that COVID-19 will prove fatal for that person. Another recent study of nearly 7,000 COVID patients found that obesity is associated with a 2-4 times greater risk of death, especially for men and all people under 60 years old.

*United States v. Perkins*, 14 Cr. 104 (LM), 2020 WL 4783558, at *4 (D.N.H. Aug. 18, 2020) (recommending that the BOP temporarily release inmate with obesity and hypertension) (internal citations omitted).

    B.  <u>Mr. Mcrae Suffers from Hypertension</u>

Mr. Mcrae's blood pressure has been elevated since he arrived at Allenwood Low in 2017. *See* Ex. C (Vitals All, Dec. 15, 2017). His more recent blood pressure readings qualify as

---

[5] Available at: https://www.theguardian.com/world/2020/aug/26/obesity-increases-risk-of-covid-19-death-by-48-study-finds
[6] Available at: https://www.sciencedaily.com/releases/2020/08/200820143854.htm
[7] Available at: https://www.acpjournals.org/doi/10.7326/M20-3742

stage 1 or stage 2 hypertension. The American College of Cardiology and American Heart Association define stage 1 hypertension as a systolic pressure ranging from 130 to 139 mm Hg or a diastolic pressure ranging from 80 to 89 mm Hg. *See* CDC, *Facts About Hypertension*.[8] Stage 2 hypertension is a systolic pressure of 140 mm Hg or higher or a diastolic pressure of 90 mm Hg or higher. *See id.* Mr. Mcrae's blood pressure fluctuated between 120/82 and 149/85 in 2019 and between 109/72 and 156/93 in 2020. *See* Ex. B (Vitals All, Dec. 15, 2019), Ex. D (Vitals All, Dec. 15, 2018). It was 133/77 when he was lasted tested on November 5, 2020. *See* Ex. B (Vitals All, Dec. 15, 2019). The BOP has not prescribed any medication to treat Mr. Mcrae's blood pressure. Instead, doctors have suggested lifestyle modifications such as weight loss, exercise, and dietary changes. *See* Ex. E (Patient Education Assessments and Topics, July 9, 2018).

The CDC has indicated that hypertension may increase the risk of severe illness from COVID-19. *See People with Certain Medical Conditions*. Medical studies and evidence have confirmed this finding, showing that people with high blood pressure or hypertension are more likely to die from COVID-19, especially when their condition is untreated with medication. *See* European Society of Cardiology, *High blood pressure linked to increased risk of dying from COVID-19* (June 5, 2020);[9] William F. Marshall, *COVID-19 and high blood pressure: Am I at risk?*, Mayo Clinic.[10]

C. Mr. Mcrae's Comorbidities Further Heighten His Risk of Serious Illness

Not only do Mr. Mcrae's obesity and hypertension each increase his risk of serious illness from COVID-19, but as the chart below indicates, together they present a dramatically

---

[8] Available at: https://www.cdc.gov/bloodpressure/facts.htm
[9] Available at: https://www.escardio.org/The-ESC/Press-Office/Press-releases/High-blood-pressure-linked-to-increased-risk-of-dying-from-COVID-19
[10] Available at: https://www.mayoclinic.org/diseases-conditions/coronavirus/expert-answers/coronavirus-high-blood-pressure/faq-20487663

increased risk of hospitalization.



This data has been confirmed by numerous medical studies. *See, e.g.,* Katelyn Newman, *Study: High Blood Pressure, Obesity Are Most Common Comorbidities in COVID-19 Patients*, U.S. News and World Report (Apr. 22, 2020) (analyzing the results of a study of 5,700 patients hospitalized and noting that "[a]mong the 5,350 patients who presented with a comorbid condition, more than 3,000–or nearly 57%–had high blood pressure, while 41.7% were obese");[11] Jonathan Cunningham, *Clinical Outcomes in Young US Adults Hospitalized With COVID-19*, JAMA Internal Medicine, (Sept. 9, 2020) (analyzing the outcomes of 3222 young adults, age 18-34 years old, hospitalized with COVID-19, and finding that 36.8% had obesity

---

[11] Available at: https://www.usnews.com/news/healthiest-communities/articles/2020-04-22/obesity-hypertension-most-common-comorbidities-for-coronavirus-patients#:~:text=April%2022%2C%202020-,By%20Katelyn%20Newman%2C%20Staff%20Writer%20April%2022,2020%2C%20at%202%3A53%20p.m.&text=High%20blood%20pressure%2C%20obesity%20and,areas%2C%20a%20new%20study%20shows

and 16.1% had hypertension, 57.6% were men, and 57.0% were Black or Hispanic).[12]

    D.  <u>Mr. Mcrae Has Prediabetes and Hepatitis C</u>

Mr. Mcrae also suffers from prediabetes and hepatitis C. *See* Ex. B (Health Problems), Ex. F. The CDC has identified diabetes mellitus as a risk factor for serious illness from COVID-19. *See People with Certain Medical Conditions.* A recent study suggests that "people with preexisting prediabetes could also experience poor outcomes" after contracting the virus. *See* Thirunavukkarasu Sathish, et al, *Preexisting prediabetes and the severity of COVID-19,* Prim Care Diabetes (Sept. 9, 2020).[13] The study cites "early indications for a possible association between preexisting prediabetes and COVID-19 disease severity." *Id.* It further observes, however, that "large-scale observational studies are required to study this relationship further." *Id.*

The CDC does not have sufficient information to determine whether people with hepatitis C are at an increased risk from COVID-19. Nonetheless, it warns that "based on available information and clinical expertise, older adults and people of any age who have serious underlying medical conditions, including people with liver disease, might be at higher risk for severe illness from COVID-19, particularly if the underlying medical conditions are not well controlled." CDC, *What to Know about Liver Disease and COVID-19* (updated May 5, 2020).[14]

### III.

### ARGUMENT

    A.  <u>Legal Framework</u>

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify

---

[12] Available at: https://jamanetwork.com/journals/jamainternalmedicine/fullarticle/2770542
[13] Available at: https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7480529/
[14] Available at: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/liver-disease.html

or reduce a term of imprisonment upon a defendant's motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." A court must find that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i). It must also consider the factors set forth in § 3553(a) to the extent that they are applicable. *Id.* § 3582(c)(1)(A).

Although § 3582(c)(1)(A) also requires that any sentencing reduction be "consistent with applicable policy statements issued by the Sentencing Commission," the Second Circuit recently held that the First Step Act rendered Guideline § 1B1.13 Application Note 1(D) inapplicable to compassionate release motions brought directly by a defendant. *Brooker,* 976 F.3d at 230. "The amendment of the compassionate release statute by the FSA 'freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them' when seeking a sentence reduction." *United States v. Fisher,* 83 Cr. 150 (PAC), 2020 WL 5992340, at *3 (S.D.N.Y. Oct. 9, 2020) (quoting *Brooker,* 976 F.3d at 237). In short, "district courts have near-absolute discretion in determining what constitutes an extraordinary and compelling circumstance warranting relief." *United States v. Correa,* 08 Cr. 1026 (VEC), 2020 WL 7490098, at *3 (S.D.N.Y. Dec. 21, 2020).

    B. <u>Analysis</u>

    1. <u>Mr. Mcrae Has Met the Exhaustion Requirement</u>

Mr. Mcrae filed an administrative request for compassionate release with the warden at Allenwood Low on June 8, 2020. His request was denied on June 12, 2020. *See* Ex. G. Because

7

over 30 days have passed since Mr. Mcrae submitted the petition, he has met the exhaustion requirement. *See* 18 U.S.C. § 3582(c)(1)(A)(i).

    2. <u>"Extraordinary and Compelling Circumstances" Warrant Mr. Mcrae's Release</u>

Considered in combination, the COVID-19 pandemic, the growing outbreak at Allenwood Low, Mr. Mcrae's medical conditions, and his remarkable rehabilitation demonstrate "extraordinary and compelling circumstances" warranting his release.

    a. *The COVID-19 Pandemic is an Extraordinary and Compelling Circumstance*

As this Court has previously recognized, "[t]he COVID-19 pandemic is indeed extraordinary and unprecedented in modern times in this nation." *United States v. Simon,* 18 Cr. 390 (PAE), 2020 WL 5077390, at *2 (Aug. 27, 2020). The pandemic continues to ravage the United States with record numbers of new infections and fatalities reported each day. *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. Times (last accessed Dec. 22, 2020).[15] Among those who survive the illness, many experience disabling health consequences, including damage to the heart, lungs, kidneys and brain. *See, e.g.*, Jennifer Couzin-Frankel, *From 'brain fog' to heart damage, COVID-19's lingering problems alarm scientists*, Science (July 31, 2020);[16] *COVID-19 Can Last for Several Months,* The Atlantic (June 4, 2020).[17]

But as severe as the pandemic is among the U.S. population, it is many times worse for the prison population. By their nature, prisons are vectors for infectious disease because individuals are held in close quarters without any ability to practice social distancing or take other preventive measures. In jails, "[t]he probability of transmission of potentially pathogenic

---

[15] Available at: https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html?action=click&module=Spotlight&pgtype=Homepage
[16] Available at: https://www.sciencemag.org/news/2020/07/brain-fog-heart-damage-covid-19-s-lingering-problems-alarm-scientists
[17] Available at: https://www.theatlantic.com/healt1h/archive/2020/06/covid-19-coronavirus-longterm-symptoms-months/612679

organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise." Joseph A. Bick, *Infection Control in Jails and Prisons,* Clinical Infectious Diseases, 2007(45) at 1047.[18] *See also United States v. Gentille,* 19 Cr. 590 (KPF), 2020 WL 1814158, at *3 (S.D.N.Y. Apr. 9, 2020) (noting "the speed with which the virus spreads, the impracticability of social distancing in federal prison, and the marked deficiencies in hygiene and medical care in prison.").

Prison residents have tested positive for COVID-19 at a rate five and a half times higher than the general population. Brendon Saloner, et al, *Covid-19 Cases and Deaths in Federal and State Prisons,* JAMA (July 8, 2020).[19] The case growth rate in prisons is more than double that of the general population. *Id.* And the death rate for prisoners is three higher than would be expected if the age and sex distributions of the U.S. and prison populations were equal. *Id.* Within the Bureau of Prisons ("BOP"), more than 35,000 inmates have tested positive for COVID-19. *See* https://www.bop.gov/coronavirus/ (last accessed Dec. 22, 2020). At least 171 inmates have died. *Id*.

Allenwood Low, where Mr. Mcrae is housed, is at the center of the pandemic. For months, the BOP managed to control the spread of coronavirus at Allenwood Low. Over the summer, the facility had no reported cases of COVID-19. Now, however, it is experiencing a serious outbreak. As of December 11, 2020, 23 inmates and eight staff members had tested positive. *See United States v. Magnuson,* 15 Cr. 50095 (JLV), 2020 WL 7318109, at *5 (D.S.D. Dec. 11, 2020). Just eleven days later, on December 22, 2020, there were 136 positive cases among inmates and nine positive cases among the staff. *See* https://www.bop.gov/coronavirus/

---

[18] Available at: https://academic.oup.com/cid/article/45/8/1047/344842
[19] Available at: https://jamanetwork.com/journals/jama/fullarticle/2768249

(last accessed Dec. 22, 2020). In all likelihood, these numbers drastically underrepresent the total case count. There are over 900 inmates and Allenwood Low, and the BOP has tested just 492 inmates since March. *See* https://www.bop.gov/coronavirus/ (last accessed Dec. 22, 2020). Without mass testing, the BOP may be presenting a false picture.

During recent calls, Mr. Mcrae has reported that the virus is spreading quickly on his unit. Dozens of inmates have tested positive and been removed from the unit over the past two weeks. Indeed, according to Mr. Mcrae, so many inmates are now infected that healthy prisoners are being moved to the gymnasium, where there are no beds or showers, to make room for those who are sick.

    *b. Mr. Mcrae's Medical Conditions are an Extraordinary and Compelling Circumstance*

Against this backdrop, Mr. Mcrae's medical conditions compound his risk of severe illness or death if he becomes infected. Many courts, including this one, have already awarded sentencing reductions to inmates with serious medical conditions who are vulnerable to COVID-19. *See, e.g., United States v. Pappas*, 17 Cr. 67 (LDH), 2020 WL 5658775 (E.D.N.Y. Sept. 23, 2020) (ordering release of inmate with severe obesity who had served 23 months of 60-month sentence); *United States v. Spencer,* 04 Cr. 1156 (PAE), 2020 WL 3893610 (S.D.N.Y. July 10, 2020) (granting compassionate release to inmate convicted of bank fraud and suffering from hypertension, kidney disease and diabetes); *United States v. Davies,* 469 F.Supp.3d 175 (S.D.N.Y. June 2020) (granting compassionate release to inmate convicted of large-scale drug trafficking conspiracy and suffering from high blood pressure, hypertension and obesity); *United States v. Brown,* 467 F.Supp.3d 209 (S.D.N.Y. June 2020) (granting compassionate release to inmate convicted of large-scale drug trafficking conspiracy and suffering from a host of medical conditions, including hepatitis C and hypertension); *United States v. Williams-Bethea*, 18 Cr. 78

10

(AJN), 2020 WL 2848098 (S.D.N.Y. June 2, 2020) (ordering release of inmate with obesity and hypertension); *United States v. Scparta*, 18 Cr. 578 (AJN), 2020 WL 1910481 (S.D.N.Y. Apr. 20, 2020) (ordering release of inmate with hypertension, sleep apnea and high cholesterol); *United States v. Sawicz*, 08 Cr. 287 (ARR), 2020 WL 1815851 (E.D.N.Y. Apr. 10, 2020) (ordering release of inmate with hypertension). To avoid a potentially deadly outcome for Mr. Mcrae, we urge this Court to do the same.

*c. Mr. Mcrae's Rehabilitation is an Extraordinary and Compelling Circumstance*

As the Second Circuit found in *Brooker,* 976 F.3d at 238, a defendant's rehabilitation is among the mix of factors a court can evaluate when deciding whether to grant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A).

Mr. Mcrae's rehabilitation has been significant. In August 2020, he completed RDAP, *see* Ex. I, a nine-month residential course "which the BOP describes as its 'most intensive treatment program.'" *Simon,* 2020 WL 5077390, at *3. And in October, he completed a second, non-residential drug treatment program. *See* Ex. H. Mr. Mcrae has also studied for the GED exam and taken a wide variety of courses in music theory, guitar, nutrition, exercise physiology, and food safety. *See* Ex. J. For two years before the pandemic, he worked in the dining hall, cleaning and serving food to other prisoners. He enjoyed the work and was sorry to stop when the facility went on lockdown.

Numerous courts evaluating compassionate release motions have concluded that a defendant's extensive rehabilitation, in combination with other factors, warrants a sentence reduction. *See, e.g., United States v. Torres*, 87 Cr. 593 (SHS), 2020 WL 2815003, at *9 (S.D.N.Y. June 1, 2020) (granting compassionate release to two inmates who demonstrated rehabilitation by, among other things, completing "a plethora of courses, educational programs

11

and life skills programs at the prisons"); *United States v. Pena,* 15 Cr. 551 (AJN), 2020 WL 2301199, at *3, 5 (S.D.N.Y. May 8, 2020) (releasing defendant convicted of "heinous" armed robbery, based partly on his work history and educational achievements in prison); *United States v. Almontes*, O5 Cr. 58 (SRU), 2020 WL 1812713, at *9 (D. Conn. Apr. 9, 2020) (granting compassionate release due to medical reasons and because the defendant's "rehabilitation from his former life of crime has been total, and he has a supportive network of family ready to help him reintegrate into society"); *United States v. Marks*, 03 Cr. 6033 (DGL), 2020 WL 1908911, at *13 (W.D.N.Y. Apr. 20, 2020) (releasing defendant convicted of drug and firearms offenses who "made a positive turnaround in his life" in prison). Mr. Mcrae has made every effort to better himself; he should be credited for the extraordinary progress he has made.

    3.  The § 3553(a) Factors Support Mr. Mcrae's Release

A consideration of the § 3553(a) factors also favors Mr. Mcrae's release.

First, Mr. Mcrae presents little "danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Admittedly, he committed a serious offense, and he has a prior record of drug sales. But his crime was non-violent, and he has no history of violent activity. Nor, during two-and-a-half years at the BOP, does he have a record of disciplinary infractions. *See* Ex. K. Prior to sentencing, Mr. Mcrae expressed his honest and genuine remorse in an "uncommonly thoughtful sentencing letter" to the Court. Dkt No. 43 (Sent Tr.) at 22:3. He has also completed the RDAP program, which should "affor[d] the Court a degree of hope that—if supervised and subject to the special condition of drug treatment…he has the capacity to avoid returning to drug usage and the drug dealing that he used to fund his habit." *Simon,* 2020 WL 5077390, at *3.

Second, Mr. Mcrae's "history and characteristics" favor his release. As the Court

recognized at his sentencing hearing, Mr. Mcrae had a difficult upbringing that included "domestic violence and turmoil in [his] childhood house." Dkt No. 43 at 23:17-18. He lost his brother and cousin to gun violence at a young age and had a serious, untreated learning disability that inhibited his educational performance and professional achievements. *See* Dkt. No. 39. But, in the years prior to the instant arrest, Mr. Mcrae achieved a measure of stability. Most notably, he met his life partner, Nafisa Moore, with whom he maintains a close bond. *See id.*

Third, Mr. Mcrae's release to home confinement would allow him to receive "needed … medical care" for his obesity, uncontrolled hypertension, prediabetes and hepatitis C. 18 U.S.C. § 3553(a).

Fourth, Mr. Mcrae has already served a significant sentence. He has been imprisoned for 30 months. With only 12 months of incarceration ahead of him before his expected release to home detention, he has completed more than two-thirds of his ultimate sentence. Thirty months' incarceration is considerable for any drug offense. But prison has been especially difficult for Mr. Mcrae since the onset of the pandemic. Although he is in a low security facility, Mr. Mcrae's unit has been on and off lockdown since March 2020. He used to have freedom to move through the entire compound, but now he is prohibited from leaving the unit except for brief, infrequent visits to commissary. Nor has Mr. Mcrae had any social visits since March 2020. Given the continuing pandemic and Mr. Mcrae's harsh conditions of confinement, thirty months' imprisonment adequately reflects the seriousness of his misconduct and has provided just punishment for the same. *See United States v. Mel*, 18 Cr. 571 (TDC), 2020 WL 2041674, at *3 (D.Md. Apr. 28, 2020) (granting release where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing"); *United States v. Rodriguez*, 03 Cr. 271 (AB), 2020 WL 1627331, at *11 (E.D.Pa Apr. 1, 2020) (at-risk

inmate's service of "most of the original sentence imposed" was "long enough" to satisfy the goals of sentencing).

Finally, Mr. Mcrae's "continued incarceration in the face of the pandemic could function as a death sentence." *Simon,* 2020 WL 5077390, at *4. Given the very real risk to Mr. Mcrae's life and health presented by the pandemic, the significant time he has already served and his impressive rehabilitation, the § 3553(a) factors will be satisfied with his compassionate release.

4. <u>Mr. Mcrae Has a Release Plan</u>

Mr. Mcrae has a safe, stable place to live upon his release. He plans to return to the home of Nafisa Moore, where he resided while he was on bail. Ms. Moore works as a security guard at Yeshiva University. She lives in a four-bedroom apartment with her mother, uncle and brother at 101 W. 140th Street in New York. Thankfully, no one in the household is experiencing COVID-19 symptoms. Mr. Mcrae and Ms. Moore would have their own bedroom, and Ms. Moore is prepared to pick up Mr. Mcrae from Allenwood Low and drive him back to New York in her cousin's car. Undoubtedly, Mr. Mcrae would be better able to receive adequate medical care and to practice social distancing at Ms. Moore's home than inside a federal prison.

## IV.

## **CONCLUSION**

For the above reasons, I respectfully request that the Court grant Mr. Mcrae's application for compassionate release.

New York, N.Y.
December 23, 2020

Respectfully submitted,

/s/

Deborah Colson