UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

JAMEL MCRAE,

Defendant.

17 Cr. 643 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from defendant Jamel Mcrae seeking his release from Allenwood Low Federal Correctional Institution ("Allenwood Low FCI") pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), in light of the risk that the COVID-19 pandemic presents for inmates, and for Mcrae in particular. *See* Dkt. 46 ("Def. Mem."). The Government opposes this request. *See* Dkt. 48 ("Gov't Mem."). For the following reasons, the Court grants this application.

Mcrae conspired to sell approximately 50 grams of crack cocaine on each of three occasions between May and June 2017. Gov't Mem. at 1. After he was arrested following the third sale, an additional 368 grams of crack cocaine were discovered in his apartment; together, the amount of crack discovered and sold totaled approximately 536 grams. Dkt. 43 ("Sent. Tr.") at 17; Gov't Mem. at 1.

On June 5, 2018, Mcrae pled guilty to the lesser included offense of conspiring to distribute 28 grams or more of a mixture or substance containing a detectible amount of cocaine base in violation of 21 U.S.C. §§ 841(b)(1)(B) and 846. Gov't Mem. at 1. Mcrae's sentencing guideline range was 188 to 235 months' imprisonment, with a mandatory minimum sentence of 60 months. *Id.*; Sent. Tr. at 5. The sentencing guidelines range was driven by the amount of

drugs and Mcrae's criminal history. At sentencing, the Government agreed that a downward variance was warranted because the "career offender guidelines [we]re too high . . . mainly [because] the convictions that [led] to him being a career offender [we]re relatively old." Sent. Tr. at 6.

On October 25, 2018, the Court sentenced Mcrae to 70 months' imprisonment and four years' supervised release, significantly below the guideline range. The Court noted that the "three prior convictions that place[d] [Mcrae] in the career offender category resulted from arrests over 13 years ago, when [he] w[as] in [his] very early twenties," and thus did not "put persuasive weight on the career offender guideline." Sent. Tr. at 15–16. The Court also noted that if the powder, rather than crack, cocaine guidelines were used, his sentencing guideline range would be 70 to 87 months. *Id.* at 16. The Court, in assessing the 18 U.S.C. § 3553(a) factors, focused primarily on the seriousness of Mcrae's offense and the consequent need for just punishment, noting the considerable amount of crack that he had sold and that had been found in his apartment. *Id.* at 17 ("[C]rack is incredibly powerful and incredibly dangerous. It breeds addiction, it breeds and it correlates with violence, it destroys lives and families and communities."). The Court noted the interest in specific deterrence, in particular because Mcrae had been an adult in his thirties when he committed the offense and because of his criminal record of drug dealing between 2003 and 2004. *Id.* at 19–20. The Court also found that the interest in general deterrence required a "meaning[ful] sentence." *Id.* at 18–19. Finally, the Court found, in the interest of public protection, that "there [was] some public benefit to [his] being incarcerated insofar as it takes a man with both a historic and recent history of dealing with crack or cocaine off of the streets." *Id.* at 21. The Court concluded that, in light of these facts, a downward variance—to the bottom of what the sentencing guideline range would have been had

the drugs in question been powder rather than crack cocaine, and not higher–was warranted. *Id*. at 26.

Mcrae has been incarcerated since his guilty plea; he was remanded on July 9, 2018, and has served a little more than 30 months of his sentence. Gov't Mem. at 2; Def. Mem. at 2; *id.*, Ex. A. In August 2020, he completed the Bureau of Prisons' 500-hour Residential Drug Abuse Program ("RDAP"), *see* Def. Mem., Ex. I, a nine-month residential course "which the BOP describes as its 'most intensive treatment program,'" *United States v. Simon,* 18 Cr. 390 (PAE), 2020 WL 5077390, at *3 (Aug. 27, 2020). "At the discretion of the Bureau of Prisons . . . those who successfully complete the [RDAP] may qualify for a sentence reduction of up to one year." *Shah v. United States*, No. 10 Cr. 1169 (WHP), 2013 WL 1641167, at *1 (S.D.N.Y. Apr. 16, 2013) (citing 18 U.S.C. § 3621(e)(2)(b)). The BOP has determined that Mcrae qualifies for a one-year reduction. It estimates that, with that reduction along with Mcrae's anticipated credit for good time, his sentence will end on June 22, 2022. Gov't Mem. at 2. Mcrae thus will become eligible for home confinement on December 22, 2021. *See* Def. Mem. at 2; *id.*, Ex. A. Mcrae has, therefore, served a little more than 30 months of his total expected 41 months of incarceration.

On December 15, 2020, the Court received, and granted, a request from Mcrae's previously appointed CJA counsel to be reappointed for the limited purpose of submitting a motion for compassionate release. Dkt. 45. On December 23, 2020, Mcrae's counsel filed such a motion, arguing that his release is warranted on account of the pandemic, the fact that Mcrae has a number of medical conditions with co-morbidities for COVID-19, his rehabilitation while incarcerated, and the fact that he is eligible for home confinement in less than 12 months. *See* Def. Mem. On January 8, 2021, the Government opposed Mcrae's motion. The Government

does not dispute that COVID-19 presents a heightened risk to Mcrae given his medical conditions, or that the reasons Mcrae gives for his early release are extraordinary and compelling. It argues, however, that the sentencing factors set out in 18 U.S.C. § 3553(a)—specifically the serious nature of his crimes, the need for general deterrence, and the need to protect the public—weigh against his early release. Gov't Mem. at 1–2.

Under 18 U.S.C. § 3582(c)(1)(A), a court:

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c). *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings, and instead required the BOP to seek such release on their behalf. *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020). However, with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants independently to seek compassionate release relief from federal courts. *Ebbers*, 432 F. Supp. 3d at 422–23.

The Second Circuit has recently clarified the regulatory guidance applicable to § 3582(c) applications made by defendants. Before the First Step Act, Congress had tasked the Sentencing

Commission with identifying circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary. That guidance, *inter alia*, (1) sets out various circumstances that present extraordinary and compelling reasons justifying release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons," *id.* § 1B1.13; the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own. Accordingly, although courts, including this one, had heretofore widely treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has recently clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, No. 19-3218, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020); *see also id.* at *7 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons, or its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to

5

the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 2020 WL 5739712, at *7.

In this case, although the question is close, consideration of the 18 U.S.C. § 3553(a) factors favors the expedition of Mcrae's release date from prison, in favor of his serving a protracted term of home confinement as a condition of supervised release.

First, and significant here, Mcrae does not have a history of violence. As a result, the focus of the § 3553(a) factor requiring that the sentence imposed "protect the public from further crimes of the defendant" centers on assuring that Mcrae not resume drug dealing. The Court's judgment is that the interest in the protection of the public can be achieved by putting in place, as a condition of supervised release, a lengthy term of home confinement, with very strict limitations on Mcrae's ability to leave the home, and reporting requirements. The Court envisions a 12-month period of home confinement (which would extend beyond the remaining anticipated term of Mcrae's carceral sentence). Critically, this Court would be responsible for sentencing him in the event that any violation of the conditions of supervised release is established. Accordingly, per this decision, Mcrae will be on notice upon his release that any violation of supervised release, and particularly a violation indicative of narcotics use or distribution or other criminality, will be regarded by the Court as a grave breach of the trust the Court is today putting in him, and would almost certainly guarantee his immediate remand and imposition of a meaningful new prison term as punishment for that breach. Having served more than 30 months in prison, including the past 10 during the severe conditions occasioned by the current COVID-19 pandemic, Mcrae assuredly has no interest in returning to that environment. He instead has every incentive to strictly obey the law so as to avoid remand and

a new prison term.

The Court accordingly finds that Mcrae's expedited release, on such conditions, would not put the public at any undue risk. For much the same reasons, Mcrae's early release is consistent with the important interest in specifically deterring him from committing future crimes. Mcrae's impressive strides while incarcerated, including his successful completion of the 500-hour RDAP program, reinforce that he has the capacity for self-control when properly incentivized.

Second, the principal § 3553(a) factors that undergirded the sentence the Court imposed were to ensure that Mcrae's sentence reflected the seriousness of his offense, promoted respect for the law, and represented just punishment. Those factors remain as weighty today as at the time of sentencing. However, Mcrae's term in custody has proven more arduous than the Court intended—or anyone could have anticipated. That is because, for the past 10 months, Mcrae has been incarcerated during the unprecedented worldwide pandemic.

Long before the current pandemic, courts had recognized that periods of pre-sentence custody spent in unusually arduous conditions merited recognition by courts in measuring the just sentence. *See, e.g.*, *United States v. Carty*, 264 F.3d 191, 196–97 (2d Cir. 2001) (holding that that "pre-sentence confinement conditions may in appropriate cases be a permissible basis for downward departures," and vacating and remanding the defendant's sentence "so that the district court [could] reconsider the defendant's request for a downward departure, and do so in the light of this holding"); *United States v. Sanpedro*, 352 F. App'x 482, 486 (2d Cir. 2009) (summary order) (noting that "[i]n imposing the sentence it did, the district court considered . . . [among other factors,] the harsh conditions of [the defendant's] confinement at Combita," in Columbia where he was detained before being extradited to the United States); *United States v.*

7

*Salvador*, No. 98 Cr. 484 (LMM), 2006 WL 2034637, at *4 (S.D.N.Y. July 19, 2006) (holding that the defendant's pre-sentence conditions while "incarcerated in the Dominican Republic, awaiting extradition to the United States . . . warrant a downward departure"); *United States v. Torres*, No. 01 Cr. 1078 (LMM), 2005 WL 2087818, at *2 (S.D.N.Y. Aug. 30, 2005) ("depart[ing] downward, by 1 level, because of the harsh conditions of defendant's pretrial detention").

The same logic applies here. As has been widely chronicled, the pandemic, for good and sound public health reasons relating to arresting the spread of the virus within the crowded confines of federal prisons and jails, has required extreme restrictions on prisoners' movements and visits. It has also exposed prisoners to heightened fears of contagion and its consequences.[1] That risk is heightened for prisoners, such as Mcrae, whose medical conditions make them especially vulnerable to the most serious effects of COVID-19. Furthermore, the specific facility that Mcrae is being held at, Allenwood Low FCI, has had a very severe outbreak of COVID-19. When Mcrae filed his motion on December 23, 2020, there were 136 positive cases of COVID-19 among the approximately 900 inmates housed there, and nine positive cases among the staff. Def. Mem. at 9–10; Gov't Mem. at 5. Although by the time the Government filed its opposition on January 8, 2021, a majority of the inmates had recovered, Gov't Mem. at 4–5, COVID-19 was, and continues to be, a danger to those incarcerated at Allenwood Low.

---

[1] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

In the Court's judgment, a day spent in prison under extreme lockdown and in well-founded fear of contracting a once-in-a-century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison.  While such conditions are not intended as punishment, incarceration in such circumstances is, unavoidably, experienced as more punishing. *See* Def. Mem. at 6; *United States v. Rodriguez*, No. 00 Cr. 761-2 (JSR), 2020 WL 5810161, at *3 (S.D.N.Y. Sept. 30, 2020) ("The pandemic, aside from posing a threat to [a defendant's] health, has made [a defendant's] incarceration harsher and more punitive than would otherwise have been the case.  This is because the federal prisons, as 'prime candidates' for the spread of the virus, have had to impose onerous lockdowns and restrictions that have made the incarceration of prisoners far harsher than normal." (citation omitted)); *United States v. Salemo*, No. 11 Cr. 65-01 (JSR), 2020 WL 2521555, at *3 (S.D.N.Y. May 17, 2020) ("noting that the BOP has taken a number of steps to mitigate the spread of the virus in federal prisons . . . [including] restrictions on visitors, restrictions on gatherings . . . [and] lockdowns lasting at least 14 days"); *United States v. Smalls*, No. 20 Cr. 126 (LTS), 2020 WL 1866034, at *2 (S.D.N.Y. Apr. 14, 2020) (noting that the "BOP has instituted a mandatory 14-day quarantine lockdown of all inmates across the BOP system").

Mcrae will become eligible for home confinement on December 22, 2021.  He has thus served approximately 30 months of his total expected 41 months of incarceration, assuming full good time credit.  *See* Def. Mem. at 2; *id.*, Ex. A.  That amounts to 70% of his expected carceral sentence. The Court's judgment is that the remaining 11 months that Mcrae is scheduled to serve in prison are significantly offset by the unexpected rigors that Mcrae has experienced during the more than 10 months he has spent in prison during COVID-19.  An additional offset is supplied by the lengthy term of home confinement that the Court will put in place as a condition of his

supervised release. In light of these factors, the Court finds that Mcrae's early release from prison is consistent with the interest of just punishment. For much the same reasons, the Court views Mcrae's overall punishment—considering its length and unexpected rigor—to constitute a sufficiently muscular general deterrent to others who might consider emulating his journey.

Centrally important, too, the Court under § 3553(a) is to consider the "history and characteristics of the defendant" and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a)(1), (2)(D). These factors take on additional weight in light of Mcrae's heightened vulnerability to COVID-19.[2] Mcrae, through counsel, credibly represents that he has a number of medical conditions which make him especially vulnerable to the most serious effects of COVID-19—obesity, hypertension, prediabetes, and hepatitis C. *See* Def. Mem. at 2. And although the Government disputes the extent of some of these conditions, *see* Gov't Mem. at 2 n.2, it acknowledges that, as the CDC has stated, his significant obesity alone places him at an increased risk of severe illness from COVID-19, and thus presents, in light of the pandemic, an "extraordinary and compelling" reason for release. Gov't Mem. at 2.

Accordingly, the Court finds that the § 3553(a) factors, viewed in combination from the vantage point of today, are consistent with Mcrae's prompt release from Allenwood Low FCI,

---

[2] *See, e.g.*, *United States v. Wilson*, 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (ordering compassionate release of defendant with heightened vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (S.D.N.Y. Aug. 27, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy); *United States v. Davies*, No. 18 Cr. 390 (PAE), Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant, who had serious medical conditions and played low-level role in drug trafficking conspiracy); *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence).

provided that his ensuing term of supervised release is subject to a condition of 12 months' home confinement. The Court also finds that the assembled considerations provide "extraordinary and compelling reasons," *Brooker*, 2020 WL 5739712, at *7, justifying Mcrae's early release. The Court primarily bases these findings on the heightened vulnerability to COVID-19 that Mcrae faces due to his medical conditions; the unexpectedly punishing quality of the 10 months that Mcrae has spent in custody during the unprecedented pandemic; the fact that Mcrae by now has served approximately 70% of his expected carceral sentence; and the sound reasons to believe that Mcrae, if on supervised release subject to a strict condition of home confinement, will abide by the law. His case thus accords with others during this extraordinary time in which the Court has recently granted compassionate release to prisoners with demonstrated heightened vulnerability to COVID-19 and who had served the majority of their carceral sentences.[3] The Court accordingly grants Mcrae's motion for compassionate release from prison pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

As noted, the Court will direct that, as a condition of the term of supervised release that will commence upon his release from prison, Mcrae spend the first 12 months following release under strict conditions of home confinement. These conditions will permit Mcrae to leave his home only for medical and employment reasons or with the advance permission of the Probation Department. The Court also expects Mcrae to be subject to close monitoring by the Probation Department,

---

[3] *See United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 (S.D.N.Y. Apr. 10, 2020) (granting compassionate release of defendant who had served all but seven months of an 88-month sentence); *United States v. Hernandez*, 451 F. Supp. 3d 301 at 305 (same for defendant who had asthma and had served 17 months of a 24-month sentence and was scheduled for release in four months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (same for defendant who had asthma and had served nine years of his 10-year sentence); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2532 (S.D.N.Y. Oct. 9, 2020) (same for defendant who had served 93 months of a 121-month sentence and was scheduled to be released in 11 months and to a halfway house in 5).

consistent with the protocols for such monitoring that are in place during the pandemic. These various restrictions are intended to advance various interests recognized by § 3553(a), including to assure just punishment, enhance specific deterrence, and protect the public, and to assist in Mcrae's reintegration into society. To assure time to implement this order, the Court orders that Mcrae be released on Friday, January 22, 2021. The Court directs that the Government and the defense, in consultation with the Probation Department, submit to the Court, by January 20, 2021, an agreed-upon order setting out the conditions of home confinement.

    SO ORDERED.

_____<br>
PAUL A. ENGELMAYER<br>
United States District Judge

Dated: January 15, 2020
      New York, New York